UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| DAVID J. BLOCH,<br>    *Plaintiff,*<br><br>*v.*<br><br>HEATHER BOUCHEY, in her<br>official capacity as Interim Secretary<br>of the Vermont Agency of Education,<br><br>JAY NICHOLS, in his official capacity<br>as Executive Director of the Vermont<br>Principals' Association,<br><br>WINDSOR CENTRAL SUPERVISORY<br>UNION BOARD, and<br><br>SHERRY SOUSA, in her official and<br>individual capacities as Superintendent of<br>Windsor Central Supervisory Union,<br>    *Defendants.* | )<br>)<br>)   Civil Action No.: 2:23-cv-00209-cr<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT JAY NICHOLS' MOTION TO DISMISS THE COMPLAINT PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), WITH
INCORPORATED MEMORDANUM OF LAW**

**GORDON REES SCULLY MANSUKHANI, LLP**
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
By: Steven J. Zakrzewski
Telephone: (212) 269-5500
szakrzewski@grsm.com
*Attorneys for Defendant Jay Nichols*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     PRELIMINARY STATEMENT ..................................................................8

II.    SUMMARY OF FACTUAL ALLEGATIONS ...................................................9

III.   LEGAL ARGUMENT............................................................................9

      A.     STANDARD OF REVIEW ...........................................................9

      B.     Plaintiff Lacks Standing to Bring Suit against Defendant Nichols........................11

      C.     VPA Was Not Involved in the Plaintiff's Employment Termination
              Whatsoever and Could Not Have Retaliated Against Him...................................13

      D.     VPA's Harassment Policy Does not Limit Plaintiff's Constitutional Right
              to Free Speech.............................................................................14

            1.     The VPA Policy Is Not Overbroad or Impermissibly Vague ...................14

            2.     The VPA Policy Is Content Neutral and Withstands Intermediate
                  Scrutiny .................................................................................19

            3.     The VPA Policy Does Not Constitute Prior Restraint on Speech ............23

IV.    CONCLUSION...................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)...................................................................10

*Act Now to Stop War & End Racism Coal. v. District of Columbia*,
  846 F.3d 391 (D.C. Cir. 2017)................................................................18

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F. 3d 140 (2d Cir. 2011).................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................10

*Bain v. Wrend*,
  No. 5:15-CV-202, 2018 WL 5980376 (D. Vt. 2018)..............................13

*Baird v. City of Burlington*,
  2016 VT 6 ...............................................................................................12

*Beal v. Stern*,
  184 F.d 117, 124 (2d Cir. 1999).............................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................10

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973)................................................................................15

*Brown v. Bd. of Educ.*,
  347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954)...............................20

*Carver v. City of New York*,
  621 F.3d 221 (2d Cir. 2010)................................................................ 9, 11

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)...................................................................23

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)..................................................................................14

*Clementine Company, LLC v. Adams*,
  74 F.4th 77 (2d Cir. 2023) .....................................................................19

*Cohen v. Koenig*,
  25 F.3d 1168 (2d Cir. 1994)..............................................................................10

*Davis v. Federal Election Commission*,
  554 U.S. 724 (2008).........................................................................................12

*Fountain v. Karin*,
  838, F.3d 129, 134 (2d Cir. 2016)........................................................................9

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006)................................................................................... 16, 22

*Garcia v. Hartford Police Dep't*,
  706 F.3d 120 (2d Cir. 2013)..............................................................................16

*Grocery Manufacturers Ass'n v. Sorrell*,
  No. 15-1504, 2016 WL 11785969 ................................................................11, 19

*Harper ex rel. Harper v. Poway Unified Sch. Dist.*,
  445 F.3d 1166 (9th Cir. 2006), vacated as moot by 549 U.S. 1262, 127 S.Ct.
  1484, 167 L.Ed.2d 225 (2007) ..........................................................................20

*Heil v. Santaro*,
  147 F.3d 103 (2d Cir. 1998)..............................................................................16

*Hill v. Colorado*,
  530 U.S. 703 (2000).........................................................................................19

*Jaghory v. New York State Dept. of Educ.*,
  131 F.3d 326 (2nd Cir. 1997).............................................................................10

*Johnson v. Miller*,
  No. 9:20-CV-622, 2020 WL 4346896 (N.D.N.Y. Jul. 29, 2020) ...........................13

*Kennedy v. Bremerton School District*,
  ___ U.S. ___, 142 S.Ct. 2407 (2022)..................................................................22

*Kolender v. Lawson*,
  461 U.S. 352 (1983).........................................................................................18

*Locurto v. Giuliani*,
  477 F.3d 159 (2d Cir. 2006)..............................................................................24

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)......................................11

*Mandell v. Cty. of Suffolk*,
  316 F.3d 368 (2d Cir. 2003)..............................................................................13

*Montero v. City of Yonkers,*
    890 F.3d 386 (2d Cir. 2018)............................................................................16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977)......................................................................................13

*New York State Club Assn., Inc. v. City of New York,*
    487 U. S. 1 (1988).........................................................................................15

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204,*
    523 F.3d 668 (7th Cir. 2008) ........................................................................21

*Obergefell v. Hodges,*
    576 U.S. 644, 135 S. Ct. 2584, 192 L.Ed.2d 609 (2015)................................20

*Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.,*
    No. 2:23-CV-01595, 2023 WL 4848509 (S.D. Ohio July 28, 2023)............... 20, 21

*Peck v. County of Onondaga,*
    5:21-CV-651, 2021 WL 3710546 (N.D.N.Y. Aug. 20, 2021) ................................13

*Pickering v. Board of Education,*
    391 U.S. 563 (1968).....................................................................................16

*Quinones v. City of Binghamton,*
    997 F.3d 461 (2d Cir. 2021)..........................................................................16

*Reed v. Town of Gilbert,*
    576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015)............................19

*Renton v. Playtime Theatres,*
    475 U.S. 41 (1986).......................................................................................20

*Smith v. Goguen,*
    415 U.S. 566, 573 (1974) .............................................................................18

*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236, 240 (2d Cir. 2002) .................................................................10

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546, 553 (1975) .............................................................................23

*Snyder v. Phelps,*
    562 U.S. 443 (2011)......................................................................................16

*Time Warner Cable Inc. v. F.C.C.,*
    729 F.3d 137, 160 (2d Cir. 2013) .................................................................19

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969)............................................................................22

*Turner Broad. Sys., Inc. v. F.C.C.*,
   512 U.S. 643, 114 S. Ct. 2445 ...........................................................19

*U.S. Bank Nat'l Ass'n v. Kimball*,
   2011 VT 81 .........................................................................................12

*United States v. Quattrone*,
   402 F.3d 304 (2d Cir. 2005)...............................................................23

*United States v. Vazquez*,
   145 F.3d 74 (2d Cir, 1998).................................................................10

*United States v. Williams*,
   553 U. S. 285 (2008)...........................................................................15

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982)............................................................................15

*Ward v. Rock Against Racism*,
   491 U.S. 781, 109 S. Ct. 2746, 105 L.Ed.2d 661 (1989).........................19

*Warth v. Seldin*,
   422 U.S. 490, 498 (1975) ...................................................................10

*Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*,
   536 U.S. 150 (2002)............................................................................16

## Constitutions

U.S. Const. amend. I................................................................9, 14, 16, 21, 24

## Statutes

9 V.S.A.  §  4502.........................................................................................17

42 U.S.C. § 1983.........................................................................................13

Vt. Stat. Ann. tit. 16, § 11(a)(26) ..........................................9, 17, 18, 20, 23

## Rules

Fed. R. Civ. P. 12(b)(1)............................................................................8, 9

Fed. R. Civ. P. 12(b)(6)..........................................................................8, 10

**Other Authorities**

Andrew R. Flores et al., *Gender Identity Disparities in Criminal Victimization: National Crime Victimization Survey, 2017-2018*, 111 Am. J. Pub. Health 726, 727 & fig.1 (2021) ..............................................................................................................21

Eugene Volokh, *Comment: Freedom of Speech and Workplace Harassment*, 39 UCLA L. Rev. 1791, 1871–72 (1992) ......................................................................................21

37 J.L. & Educ. 463, 492–96 (2008)............................................................................................21

Kirsty A. Clark et al., *Prevalence of Bullying Among Youth Classified as LGBTQ Who Died by Suicide as Reported in the National Violent Death Reporting System, 2003-2017*, 174 JAMA Pediatrics 1211 (2020)........................................................21

Defendant Jay Nichols ("Defendant Nichols"), in his official capacity as Executive Director of the Vermont Principals' Association (the "VPA"), respectfully moves to dismiss Plaintiff David J. Bloch's ("Plaintiff" or "Bloch") Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## I. __PRELIMINARY STATEMENT__

The sufficiency of a complaint is measured by the allegations it contains. Here, Plaintiff alleges that his rights were violated when his school district, through the superintendent, Defendant Sousa, terminated his employment. Notably, the Complaint does not contain a *single* allegation that Defendant Nichols or the VPA were involved in the decision to terminate his employment in any way. Plaintiff does not allege that the VPA exerted oversight over the decision to terminate his employment, that it provided any input whatsoever on Defendant Sousa's alleged interpretation of the VPA's policies, or even that it voiced any approval of the decision after-the-fact. Instead, Plaintiff's sole substantive allegation against the VPA, it seems, is that it has a Harassment, Hazing, and Bullying ("HHB") model policy that uses a definition the word "harassment" he believes is overbroad. That this policy exists and Plaintiff disagrees with it are not sufficient bases to bring suit against Nichols and the VPA.

The thread connecting the named Defendants in this suit is that they all use the same definition of "harassment" in their HHB policies, but this is not a revelation—it is merely the definition set forth by statute in Vermont. The decision to include Defendant Nichols and the VPA in his Complaint is evidence of Plaintiff's true motivations here: rather than redress any actionable wrong he has experienced, he seeks to rewrite Vermont law to suit his own beliefs at the expense of others. Plaintiff has not been injured by the VPA and has not stated any actionable claim against

the VPA, and thus his Complaint must be dismissed against Defendant Nichols in its entirety.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Though Defendant Nichols vigorously disputes the facts alleged in Plaintiff's Complaint, for purposes of this motion alone, a brief summary of Plaintiff's relevant allegations follows.

Plaintiff was the snowboarding coach at Woodstock Union High School ("Woodstock"). *See* Plaintiff's Complaint ("Compl.") at ¶ 1. On February 8, 2023, Woodstock's snowboarding team was set to compete against a team from another school district that included a transgender athlete. *Id.* ¶¶ 92-93. Plaintiff overheard two team members discussing the transgender athlete, and he interjected into the conversation to voice his beliefs about sex and gender. *Id.* ¶¶ 95, 99-102. The next day, Plaintiff's employment was terminated by the Superintendent of Windsor Central Supervisory Union School District ("WCSU"), Defendant Sherry Sousa. *Id.* ¶ 118.

VPA has an HHB policy that adopts the definition of "harassment" found in 16 Vt. Stat. Ann. § 11(a)(26). *Id.* ¶ 160. Though the employment termination letter from Defendant Sousa to Plaintiff mentions violation of VPA's "Association Athletics" policy, it quotes directly from WCSU's own HHB policy and indicates that an interpretation of that policy justified the termination of Plaintiff's contract as Woodstock's snowboarding coach. *Id.* at Ex. 8.

After his termination, Plaintiff initiated this lawsuit alleging that all Defendants, including Defendant Nichols, retaliated against him and violated his First Amendment rights. *Id.* ¶ 13

## III.   LEGAL ARGUMENT

### A.    STANDARD OF REVIEW

Under Rule 12(b)(1), a plaintiff "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karin*, 838, F.3d 129, 134 (2d Cir. 2016). Standing "is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting

*Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Thus, the party invoking federal jurisdiction bears the burden of establishing the elements of standing. *United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir, 1998). The Court, in addressing whether a plaintiff has standing, "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2nd Cir. 1997)). However, the Court may also consider evidence outside the pleadings when deciding standing. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F. 3d 140, 145 (2d Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When deciding a motion to dismiss, courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Importantly,"[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). If it appears that Plaintiff cannot prove that there is a set of facts to support his claim that would entitle him to relief, the Court should dismiss the claims. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

**B.      Plaintiff Lacks Standing to Bring Suit against Defendant Nichols**

The issue of whether the Plaintiff has standing must be addressed at the outset of this case. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 618 (D. Vt. 2015) (Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).) If Plaintiff lacks standing, then the Court has no jurisdiction to hear his claims and must dismiss the case. *See id.* (Citing *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) ("[P]laintiff[s] must demonstrate standing for each claim and form of relief sought.")).

The burden of establishing the three elements required to demonstrate standing is upon the party invoking federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). First, a plaintiff must show that he has suffered an "injury-in fact," in that he has suffered invasion of a legally protected, concrete and particularized interest was invaded. *Id.* at 560. The injury must be "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). Next, a plaintiff must show that there is "a causal connection between the injury and the conduct complained of." *Id.* The alleged must be "fairly traceable to the challenged action of the defendant" rather than the result of an independent action by a third party.   *Id.* (internal quotations omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotations omitted).

Here, Plaintiff alleges that he has suffered injuries stemming from the termination of his employment and purported violation of his Constitutional rights. Compl. ¶ 13. Plaintiff further alleges that all Defendants' actions and HHB statutes, policies, or procedures caused injury to him, including deprivation of constitutional rights, loss of income, loss of reputation, and pain, suffering and emotional distress. *See* Compl. ¶ 165. Plaintiff must establish standing not only for each claim

he brings, but also "for each form of relief that is sought." *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008). It is clear that Plaintiff cannot carry his burden to establish standing against VPA for any of his asserted claims or the relief he seeks based upon these alleged injuries.

Plaintiff's alleged injuries are simply not traceable to Defendant Nichols or the VPA. "A plaintiff who shows no particular injury that is attributable to the defendant has no standing to bring a suit." *Baird v. City of Burlington*, 2016 VT 6, ¶ 13 (citing *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶ 12). Here, Plaintiff is engaging in transparent group pleading that seeks relief against all Defendants equally despite the clear distinctions between their respective involvement—or lack thereof—in Plaintiff's termination. Plaintiff has failed to allege any facts that indicate, let alone establish, that his alleged injuries were caused by the VPA or its policies. Plaintiff does not allege that the VPA had any part in the decision to terminate his employment, that the VPA was consulted on Defendant Sousa's alleged interpretation or citation of the VPA's HHB policies, or that the VPA has any kind of direct oversight over member schools' discrete employment decisions. Plaintiff merely alleges that the VPA's policy was generally referenced in the employment termination letter given to him by Defendant Sousa, though the letter itself specifically cites and quotes WCSU's HHB policy. Compl. At Ex. 8. The VPA was not informed of any alleged violation of its policy, nor was it given the opportunity to investigate any claim that its policy was violated. *See* Compl. at Ex. 12, p. 15. It would defy logic to suggest that the VPA, which was never even aware of a purported violation of its policies by Plaintiff, injured Plaintiff by unconstitutionally limiting his speech. As such, Plaintiff should not be allowed to pursue claims against the VPA for alleged damages that are not traceable to it.

Furthermore, Plaintiff's injuries would not be redressable by a finding in his favor against the VPA. Since Plaintiff has not alleged, and cannot show, that the VPA's policies caused him

injury, any order requiring a change to the VPA's policies would necessarily fail to redress Plaintiff's alleged injuries. Likewise, since Defendant Nichols and the VPA had no part in the decision to terminate Plaintiff's employment and do not have any authority to make discrete employment decisions for member schools, Defendant Nichols very literally could not comply with Plaintiff's request that all Defendants reinstate his employment. Finally, any kind of monetary damages, even nominal damages, cannot redress Plaintiff's alleged injuries that are not traceable to Defendant Nichols.

### C.   VPA Was Not Involved in the Plaintiff's Employment Termination Whatsoever and Could Not Have Retaliated Against Him

To succeed on his claim under § 1983, Plaintiff must establish that (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) there was a causal connection between the speech and the adverse employment action.  *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003); *Bain v. Wrend*, No. 5:15-CV-202, 2018 WL 5980376, at *3 (D. Vt. 2018) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87 (1977)). "It is well settled in this Circuit that 'personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Peck v. County of Onondaga*, 5:21-CV-651, 2021 WL 3710546, at *9 (N.D.N.Y. Aug. 20, 2021); *see also Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, at *9 (N.D.N.Y. Jul. 29, 2020) (internal quotation marks and citations omitted). Plaintiffs "must allege a tangible connection between the acts of the defendant and the injuries suffered." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that his employment termination was retaliatory and violated his right to express constitutionally protected views. However, as noted above, he does not allege that Defendant Nichols or the VPA were involved in his termination in any capacity. Plaintiff's retaliation cause of action must be dismissed against the VPA.

The Complaint merely mentions that the policy cited in Defendant Sousa's letter to Plaintiff outlining her decision to terminate his employment termination used the same definitions of "harassment" as the harassment policy VPA created, citing the Vermont statutory definition of harassment. Plaintiff's Complaint alleges retaliatory discharge against all Defendants; but based on current information and belief, the VPA and Nichols knew nothing about the termination. Further, there is no plausible allegation that the VPA or Nichols were involved in the termination to support the Plaintiff's legal contentions. Not only does Plaintiff lack the required standing to bring suit against Defendant Nichols and the VPA for alleged retaliation, he has entirely failed to state a cause of action for retaliation against Defendant Nichols and the VPA. On the face of his Complaint, Plaintiff has not made a sufficient connection between the VPA and the decision to terminate his employment.

> **D.    VPA's Harassment Policy Does not Limit Plaintiff's Constitutional Right to Free Speech**

The remainder of Plaintiff's claims are related to purported violations of his First Amendment rights related to Defendants' HHB policies. For the reasons stated below, none of Plaintiff's allegations are persuasive, and these claims must be dismissed.

> *1.    The VPA Policy Is Not Overbroad or Impermissibly Vague*

Though Plaintiff states multiple causes of action related to purported violations of his Constitutional right to free speech, he merely repeats and repackages the same arguments as to each allegedly distinct theory of violation. Each of these causes of action are, in sum and substance, allegations that the Defendants' HHB policies are too imprecise in their definition of the term "harassment." Imprecise laws can be challenged by allegations of either overbreadth or vagueness. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

The overbreadth doctrine allows a party to challenge a statute on its face even if the statute would be considered constitutional as applied to that party. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). "In such cases, it has been the judgment of [the Supreme] Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Id.* Therefore, if a litigant can show that "the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep,'" the law will be held invalid. *Morales*, 527 U.S. at 52 (quoting *Broadrick*, 413 U.S. at 615). However, "[i]nvalidation for overbreadth is '"strong medicine" that is not to be 'casually employed.'" *United States v. Williams*, 553 U. S. 285, 293 (2008). To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *New York State Club Assn., Inc. v. City of New York*, 487 U. S. 1, 14 (1988).

In analyzing overbreadth, the first consideration is whether and to what extent the law reaches protected conduct or speech. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) ("In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct"). The second is determining the "plainly legitimate sweep" of the statute, that is, the sweep that is justified by the government's interest. *See Broadrick*, 413 U.S. at 615. The third is determining the likely chilling effect of the law, or, in other words, the law's burden on speech. *Id.* The last step involves weighing these various factors together, paying particular attention to the burden on speech when judging the illegitimate versus legitimate sweep

of the law. *Id.*; *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 165 (2002).

As to the first and second elements, Vermont's statutory definition of "harassment," as applied by the VPA in its HHB policies, does not reach a significant amount of protected speech, and instead has a plainly legitimate and lawful sweep. The First Amendment protects a public employee's speech only when it is "made as a citizen on matters of public concern rather than as an employee on matters of personal interest." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129–30 (2d Cir. 2013) (quotation omitted). Whether speech is on a matter of public concern presents a question of law that takes into consideration the content, form, and context of a given statement. *Montero v. City of Yonkers*, 890 F.3d 386, 399 (2d Cir. 2018). Speech deals with matters of public concern when it can be fairly considered as relating to matters of political, social, or general interest to the community or value and concern to the public. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011). When a public employee speaks pursuant to their "official duties," their speech is not protected. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Likewise, when a public employee speaks on a "personal grievance" or issue that is "personal in nature," their speech is not protected. *Quinones v. City of Binghamton*, 997 F.3d 461, 466-67 (2d Cir. 2021). And, even if a public employee is speaking on a matter of public concern, such speech can be restricted if such restriction is "directed at speech that has some potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418; *see also Pickering v. Board of Education*, 391 U.S. 563, 568 (1968; *Heil v. Santaro*, 147 F.3d 103, 109 (2d Cir. 1998).

Despite Plaintiff's attempt to paint the VPA's HHB policy as a wide net that would catch even the most basic protected speech, the VPA policy is appropriately limited in its application to the school setting, and therefore to the Plaintiff's "official duty" as a public school employee.

Specifically, Vermont's Public Accommodations Act and the VPA policy "prohibit[] discrimination and/or harassment of students on school property or at school functions by students or employees." *See* 9 V.S.A. 4502; Compl. at Ex. 12. No protected speech is targeted by these policies.

Furthermore, Vermont adopted the subject statutory definition of harassment specifically to address language and conduct that would have "the purpose or effect of objectively and substantially undermining and detracting from or interfering with a student's educational performance or access to school resources or creating an objectively intimidating, hostile, or offensive environment." 16 Vt. Stat. Ann. § 11(a)(26). The VPA adopted Vermont's definition in order to further this aim. This is the exact type of restriction on speech that courts regularly find to be appropriate when applied in an educational setting. The State does not implement such restrictions to favor certain viewpoints over others, instead, it does so to protect schoolchildrens' learning environments in order to prevent disruption to their access to education. Such regulations and policies are well within the "legitimate sweep" of restricted speech to ensure this access to education, By Plaintiff's own description, the conduct for which his employment was terminated can only be interpreted as speech he made in the context of his official position of snowboarding coach. At an official school event where Plaintiff was actively engaged in coaching his team, he spoke to two team members while the match was ongoing about his views on sex and gender. He was not speaking on matters of public concern; instead, he used his position of authority to insert himself into a conversation between two youth members of his team to explain his personal interest and opinions in the topic they were discussing. That Plaintiff's actions were considered violative of an HHB policy using Vermont's statutory definition of "harassment" is not an indication that

the definition is overbroad; instead, it is proof that the definition is narrow enough to target a particularly harmful and concerning subset of unprotected speech.

By that same token, Plaintiff's assertion that the VPA's policies are unduly vague also fails. A "statute authorizes an impermissible degree of enforcement discretion—and is therefore void for vagueness—where it fails to 'set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement.'" *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) (quoting *Smith v. Goguen*, 415 U.S. 566, 573 (1974)); *see also Kolender v. Lawson,* 461 U.S. 352, 358 (1983) (explaining that the most "important aspect of vagueness doctrine" is "the requirement that a legislature establish minimal guidelines to govern law enforcement" (internal citation omitted)). The definition of "harassment" at issue here is sufficiently descriptive to prevent any concern that it would be enforced arbitrarily. Though Plaintiff argues that there is too much room for individuals to interpret the actions constituting "harassment" under the Vermont definition, the prohibited conduct is clearly defined as:

> An incident or incidents of verbal, written, visual, or physical conduct, including any incident conducted by electronic means, based on or motivated by a student's or a student's family member's actual or perceived race, creed, color, national origin, marital status, sex, sexual orientation, gender identity, or disability that has the purpose or effect of objectively and substantially undermining and detracting from or interfering with a student's educational performance or access to school resources or creating an objectively intimidating, hostile, or offensive environment.

16 Vt. Stat. Ann. § 11(a)(26). The statute continues by mandating that such conduct must be based on a student or a student's family member's protected characteristic. *Id.* This definition, which requires an objective analysis, provides adequate notice about what conduct could be considered violative. Courts cannot require statutes to use language with "mathematical certainty" or to withstand any imagined hypothetical scenario; instead, to defeat a vagueness argument, the statute

in question need only be sufficiently clear as to what it prohibits. *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Despite Plaintiff's willful blindness to the guidelines adopted by the VPA, they are undeniably descriptive as to the conduct that is prohibited.

### 2. The VPA Policy Is Content Neutral and Withstands Intermediate Scrutiny

Plaintiff also attempts to argue that the VPA's policies are impermissible content-based restrictions on speech. However, all policies the Complaint cites, including the VPA's, are content neutral. The principal inquiry in determining content neutrality in speech cases generally, "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Grocery Mfrs. Ass'n v. Sorrell*, 102 F. Supp. 3d 583, 624 (D. Vt. 2015), *appeal withdrawn sub nom*; *Grocery Manufacturers Ass'n v. Sorrell*, No. 15-1504, 2016 WL 11785969 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L.Ed.2d 661 (1989)). "[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based," whereas "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Turner Broad. Sys., Inc.*, 512 U.S. at 643, 114 S. Ct. 2445. If a speech restriction is content-based, it typically must satisfy strict scrutiny, *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015), However, if a restriction is content-neutral, it need only satisfy intermediate scrutiny and will be upheld if it "(1) 'advances important governmental interests unrelated to the suppression of free speech' and (2) 'does not burden substantially more speech than necessary to further those interests.'" *Clementine Company, LLC v. Adams*, 74 F.4th 77, 88 (2d Cir. 2023) (quoting *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 160 (2d Cir. 2013)).

Plaintiff incorrectly argues that his speech was regulated because the government disagreed with his point of view. However, the policies at issue are inarguably content neutral, as their

purpose is not to quash particular viewpoints, but instead to prevent harmful "secondary effects" of speech. *See, e.g. Renton v. Playtime Theatres*, 475 U.S. 41, 47-48 (1986) (finding a zoning ordinance related to erotic theaters was content neutral because the ordinance was aimed at preventing crime and lowered property values rather than suppressing erotic speech).

Under the VPA policy, Plaintiff is *not* prevented from having or sharing a particular viewpoint. Speech is only prohibited insofar as it has the effect of "substantially undermining and detracting from or interfering with a student's educational performance or access to school resources or creating an objectively intimidating, hostile, or offensive environment." 16 Vt. Stat. Ann. § 11(a)(26). Recently, the Southern District of Ohio concluded that a hostile environment created by discriminatory speech is enough to cause a substantial disruption on its own, as "a core component of a public school's mission is to educate children; its mission is also to safeguard the wellbeing of its students." *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 2:23-CV-01595, 2023 WL 4848509, at *11 (S.D. Ohio July 28, 2023). Reasoning that a hostile environment is disruptive to a child's education, the court observed that "[i]Identity-based comments cut to the core of who we are as individuals and belittle our sense of place in society— especially, though not exclusively, for individuals who are members of minority groups that have been historically oppressed. Such language serves to reinforce and re-emphasize "a feeling of inferiority as to [an individual's] status in the community that may affect their hearts and minds in a way unlikely ever to be undone." *Id.* (citing *Brown v. Bd. of Educ.*, 347 U.S. 483, 494, 74 S. Ct. 686, 98 L. Ed. 873 (1954); *Obergefell v. Hodges*, 576 U.S. 644, 675, 135 S. Ct. 2584, 192 L.Ed.2d 609 (2015)).[1]

---

[1] Discriminatory language has been shown to have significant effects on schoolchildren, including, as relevant to this case, transgender students. The status hierarchies and sense of inferiority reinforced by these comments can severely hamper students' ability to learn effectively and even inhibit their willingness to attend school in the first place, S*ee Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1177–83 (9th Cir. 2006),

The VPA policy similarly prohibits derogatory speech that targets individuals on the basis of gender identity (or race, age, religion, or any other protected characteristic). The VPA policy intentionally restricts discriminatory speech that creates the type of hostile environment that can have severely negative effects on students' attendance and performance in school and their physical and psychological wellbeing—in other words, on the orderly operation of the school and its mission. *See Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. No. 204*, 523 F.3d 668, 674 (7th Cir. 2008). "Speech that directly targets students on account of their gender identity must be separated from speech that discusses a political, social, or religious perspective in a non-derogatory manner." *Parents Defending*, 2023 WL 4848509 at *13 (*see* Emily Gold Waldman, *A Post-Morse Framework For Students' Potentially Hurtful Speech (Religious and Otherwise)*, 37 J.L. & Educ. 463, 492–96 (2008); cf. Eugene Volokh, *Comment: Freedom of Speech and Workplace Harassment*, 39 UCLA L. Rev. 1791, 1871–72 (1992) (suggesting that "[d]irected speech can be suppressed with minimum impact on First Amendment interests" because the political viewpoint of an ad hominem attack is often separable from the attack itself). Finding that the Vermont statutory definition of "harassment," or the policies adopted by the VPA using this definition, are content-based restrictions on speech would neglect this important purpose and context. Instead,

---

vacated as moot by 549 U.S. 1262, 127 S.Ct. 1484, 167 L.Ed.2d 225 (2007) (discussing literature on the negative effects of "violence and verbal and physical abuse at school" on the school performance, including academic achievement and attendance, of LGBTQ youth), especially in light of the long history of stigmatization and erasure of transgender individuals. *See* Levy & Barry, *supra*, at 1129 (noting that the history of conversion practices reflects a long-standing depiction of "transgender identity as pathological and something to be eradicated"); *cf.* Andrew R. Flores et al., *Gender Identity Disparities in Criminal Victimization: National Crime Victimization Survey, 2017–2018*, 111 Am. J. Pub. Health 726, 727 & fig.1 (2021) (finding that transgender adults suffer substantially higher rates of violent victimization and property crime than cisgender adults did). Oftentimes, they also serve as a pathway towards physical harms. Transgender youth are subject to violence in school at a far higher rate than other students: 23.8% are threated or injured with a weapon at school, compared to 6.4% of cisgender males and 4.1% of cisgender females. Johns et al., *supra*, at 69 tbl.2. Similarly, transgender youth consider suicide, make suicide plans, and attempt suicide at far higher rates than other students. *Id.*; *see also* Kirsty A. Clark et al., *Prevalence of Bullying Among Youth Classified as LGBTQ Who Died by Suicide as Reported in the National Violent Death Reporting System, 2003-2017*, 174 JAMA Pediatrics 1211 (2020) (finding that suicides of LGBTQ youth were over four times more likely to be associated with prior bullying than suicides of non-LBTQ decedents).

these policies serve an important governmental interest and are narrowly defined in the statute itself to adequately limit the conduct prohibited.

At the same time, even if these policies were considered content-based restrictions on speech, they would still be permissible in the context of a school environment. Government employees' speech is generally less protected than other private citizens because, "in addition to being private citizens, teachers and coaches are also government employees paid in part to speak on the government's behalf and convey its intended messages." *Kennedy v. Bremerton School District,* ___ U.S. ___, 142 S.Ct. 2407, 2423 (2022). Further, additional restrictions on government employee speech are appropriate because "public employees…often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Garcetti*, 547 U.S. at 419 (2006). In schools specifically, courts have long held that restrictions on free speech are permissible if the speech restricted causes substantial disruption to the school or its mission to educate children and keep them safe from physical harm *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969), *Tinker* has been understood to allow schools to regulate and punish speech that causes a substantial disruption or invades the rights of others. Here, the VPA policies at issue are specifically aimed to prevent teachers from acting in a manner that could not be more contrary to the aims of the public schools that employ them: harassing students such that they are denied equal educational opportunity. There can be no stronger connection between the statutory prohibition and a legitimate state interest. Further, the definition used in the statute limits its application to conduct with the purpose or effect of denying a student's equal access to education and that is motivated by a student's or student's family member's protected characteristic, and is

thus narrowly tailored to protect the VPA's interest in ensuring equal access to education in its member schools.

### 3.    The VPA Policy Does Not Constitute Prior Restraint on Speech

Plaintiff next alleges that Defendants' HHB policies constitute impermissible prior restraints on speech because they allegedly "threaten future speech" due to their respective definitions of "harassment."  Compl. ¶¶ 203-08. A prior restraint is "a law, regulation or judicial order that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression." *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005). Prior restraints generally fall into two categories: "(1) preventing the printed publication of disfavored information…and (2) a facially-neutral law that sets up an administrative apparatus with the power and discretion to weed out disfavored information before it occurs." *Citizens United v. Schneiderman*, 882 F.3d 374, 387 (2d Cir. 2018) (internal citations omitted). Importantly, "the essence of prior restraints are that they give public officials the power to deny use of a forum in advance of actual expression." *Beal v. Stern*, 184 F.d 117, 124 (2d Cir. 1999) (quoting *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553 (1975)) (internal quotations and modifications omitted).

Interpreting VPA's HHB policy as a prior restraint on speech would "stretch the doctrine beyond what it can bear." *Citizens United*, 882 F.3d at 387. VPA's policy, as cited in the Complaint, adopts the statutory definition of "harassment" set forth at 16 Vt. Stat. Ann. § 11(a)(26). See Compl. ¶¶ 144-45; 164. This definition, as described *infra*, does not categorically ban speech before it occurs, but instead puts individuals on notice of potential consequences to harassing activities that are objectively harmful to the school environment. To be clear: there is *no mechanism* in these policies through which a VPA official can stop speech before it occurs. Instead, the harassment definition is part of a larger policy framework that requires an objective

investigation into any purported policy violation of speech or conduct that has already taken place. *See* Compl. at Ex. 12. Rather than any attempt to prevent disfavored speech before it occurs, these policies are meant only to ensure that government employees and public school students are conducting themselves in a manner that does not deny educational opportunity to others based on a protected characteristic. It is entirely within the VPA's power to adopt such policies, which comport with Vermont law and only interact with the First Amendment insofar as they prohibit government employees from speaking in such a way that harms a school's essential interest in protecting students and fostering an environment of equal educational opportunity. This minor First Amendment interaction is permissible. *See Locurto v. Giuliani*, 477 F.3d 159, 183 (2d Cir. 2006) ("The First Amendment does not require a government employer to sit idly by while its employees insult those they are hired to serve and protect").

These properly-tailored limitations on the speech of public schoolteachers and students do not constitute prior restraints. Instead, the VPA Policy specifically applies to a specific type of behavior, viewed in the appropriate context, in an attempt to prevent objectively harmful impacts to schools and students. Plaintiff's request that these policies must be struck down as impermissible prior restraints on speech must be denied.

## IV.   **CONCLUSION**

Plaintiff has failed to plausibly allege that the Defendant Nichols or the VPA caused his alleged injuries, or that the Defendant as a representative of VPA could in any way provide redress for his employment termination. Additionally, the Complaint fails to establish standing for the Counts arising out of a First Amendment violation. Therefore, this court has no subject matter jurisdiction over the issues. Furthermore, even if Plaintiff made the requisite showing of standing—which he has not—he has also entirely failed to state any viable claim against Defendant

Nichols or the VPA. Accordingly, all Counts of the Complaint against Defendant Nichols as a representative of the VPA should be dismissed in their entirety with prejudice.

Dated: September 8, 2023    Respectfully Submitted,

           COUNSEL FOR THE DEFENDANT,
           JAY NICHOLS, in his official capacity as
           Executive Director of the Vermont Principals'
           Association

           */s/ Steven J. Zakrzewski*
           Steven J. Zakrzewski, Esq.
           GORDON REES SCULLY MANSUKHANI, LLP
           95 Glastonbury Blvd, Suite 206
           Glastonbury, CT 06033
           T: (860) 494-7511
           szakrzewski@grsm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will provide electronic notification of such filing to Counsel of Record for the Plaintiff, and to all other registered users.

*/s/ Steven J. Zakrzewski*
Steven J. Zakrzewski