UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID J. BLOCH,<br><br> *Plaintiff,*<br><br>v.<br><br>HEATHER BOUCHEY, in her official capacity as Interim Secretary of the Vermont Agency of Education,<br><br>JAY NICHOLS, in his official capacity as Executive Director of the Vermont Principals' Association,<br><br>WINDSOR CENTRAL SUPERVISORY UNION BOARD, and<br><br>SHERRY SOUSA, in her official and individual capacities as Superintendent of Windsor Central Supervisory Union,<br><br> *Defendants.* | Civil Action No. 2:23-cv-209 |

### DEFENDANTS WINDSOR CENTRAL SUPERVISORY UNION BOARD AND WINDSOR CENTRAL SUPERVISORY UNION SUPERINTENDENT SHERRY SOUSA'S REPLY TO OPPOSITION TO MOTION TO DISMISS FACIAL CHALLENGES SET FORTH IN PLAINTIFF'S SECOND, THIRD, AND FOURTH CAUSES OF ACTION

 Defendants Windsor Central Supervisory Union Board and Windsor Central Supervisory Union Superintendent Sherry Sousa (collectively, "the Supervisory Union Defendants"), by and through counsel, Lynn, Lynn, Blackman & Manitsky, P.C., hereby reply to Plaintiff's opposition to their motion to dismiss the facial First Amendment challenges set forth in the second, third, and fourth causes of action in Plaintiff David J. Bloch's Verified Complaint as follows.

1

Plaintiff's lengthy recitation in the Opposition of the "facts" in his Verified Complaint[1] is irrelevant to the issue presented by the Supervisory Union Defendants' partial motion to dismiss. The question before the Court is whether the Supervisory Union's Policies and Procedures for the Prevention of Harassment, Hazing, and Bullying, adopted pursuant to Vermont law, 16 V.S.A. § 570, *et seq*., (the "Vermont HHB Policy") is unconstitutional on its face. Since it is not, the Court should grant the motion to dismiss.[2]

### I. The Vermont HHB Policy is not overbroad because it uses an objective standard in reference to the disruption caused by harassment in schools and is not a prior restraint on speech.

Contrary to Plaintiff's assertion, a motion to dismiss is a proper mechanism to resolve a claim alleging a facial challenge to a policy. *See Kittay v. Giuliani*, 252 F.3d 645, 646-647 (2d Cir. 2001) (affirming dismissal of facial challenge to regulation). In the school setting, a claim of overbreath in violation of the First Amendment is subject to different considerations:

> Because of the duties and responsibilities of the public elementary and secondary schools, the overbreadth doctrine warrants a more hesitant application in this setting than in other contexts. There are important reasons for this. First, *Tinker* acknowledges what common sense tells us: a much broader "plainly legitimate" area of speech can be regulated at school than outside school. Speech that disrupts education, causes disorder, or inappropriately interferes with other students' rights may be proscribed or regulated. 393 U.S. at 513, 89 S.Ct. 733. Everyday school discipline does not depend on the necessity of a speech code. In the public school setting, the First Amendment protects the nondisruptive expression of ideas. It does not erect a shield that handicaps the proper functioning of the public schools.

---

[1] Evidence and testimony at the September 25, 2023 Preliminary Injunction Hearing established that the central premise asserted in the Verified Complaint is false. The Supervisory Union Defendants terminated Plaintiff's employment because he made disparaging comments about a player on the opposing team while acting as the coach during a snowboarding meet, not because of his general comments concerning gender identity. The Verified Complaint completely omits the fact that Plaintiff made the statement and that he confirmed he made the statement when interviewed by the Supervisory Union Defendants prior to his termination.

[2] Plaintiff's repeated reliance on *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2473 (2018), is misplaced; that case concerned compelled speech in the form of union dues and rejected the applicability of *Pickering* and its progeny in that context. Nothing in the Vermont HHB Policy or the alleged facts of this case concern compelled speech. Although the as-applied First Amendment retaliation claim concerns public employee speech, the analysis of the facial challenge to the Vermont HHB Policy primarily concerns the potential impact on student speech, as addressed below.

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 259 (3d Cir. 2002) (footnote omitted). "Students cannot hide behind the First Amendment to protect their 'right' to abuse and intimidate other students at school." *Id*. at 264.

One significant, perhaps dispositive, difference between the Vermont HHB Policy and certain deficient policies is the repeated appearance of the modifying word "objectively":

> "Harassment" means an incident or incidents of verbal, written, visual, or physical conduct, including any incident conducted by electronic means, based on or motivated by a student's or a student's family member's actual or perceived race, creed, color, national origin, marital status, sex, sexual orientation, gender identity, or disability that has the purpose or effect of <u>objectively</u> and substantially undermining and detracting from or interfering with a student's educational performance or access to school resources or creating an <u>objectively</u> intimidating, hostile, or offensive environment.

16 V.S.A. § 11(a)(26)(A) (emphasis added).

*Saxe v. State Coll. Area Sch. Dist*. explained that the federal anti-discrimination laws Title VII and Title IX are permissible in part because they use an objective standard. 240 F.3d 200, 205 (3d Cir. 2001) (explaining that "the objective prong of this inquiry must be evaluated by looking at the 'totality of the circumstances.'"). *Saxe* faulted that school's harassment policy because it lacked the "objective prong," explaining, "the Policy's prohibition extends beyond harassment that objectively denies a student equal access to a school's education resources." *Id*. at 210. This is because the inclusion of an objective standard in a policy protects against arbitrary or subjective enforcement. *Compare DeJohn v. Temple Univ*., 537 F.3d 301, 317–18 (3d Cir. 2008) ("Absent any requirement akin to a showing of severity or pervasiveness—that is, a requirement that the conduct objectively and subjectively creates a hostile environment or substantially interferes with an individual's work—the policy provides no shelter for core protected speech.") (citing *Saxe*) *with Marshall v. Ohio Univ*., No. 2:15-CV-775, 2015 WL 1179955, at *6 (S.D. Ohio Mar. 13, 2015)

3

(distinguishing *DeJohn* because the harassment policy included an objective standard to be applied to the "purpose and effect" language, reflecting narrow tailoring).

Unlike the policies in *Saxe* and *Dejohn*, the Vermont HHB policy language uses an objective standard similar to Title VII and Title IX. 16 V.S.A. § 11(a)(26)(A). Indeed, the Vermont Supreme Court has expressly established an objective standard for such Vermont school harassment cases under the Vermont Public Accommodations Act:

> Accordingly, we hold that a plaintiff bringing a VPAA action based on a hostile school environment created by student-student harassment must show that: (1) he or she was the victim of harassing conduct so severe, pervasive, and objectively offensive that it deprived him or her of access to the educational opportunities or benefits provided by the school; and (2) the plaintiff exhausted the administrative remedies available, or that circumstances existed that relieved the plaintiff of the exhaustion requirement.
> * * *
>
> [T]his standard provides courts with objective criteria for evaluating the conduct of the parties in a hostile school environment harassment case to a greater extent than the "knew or should have known" standard proposed by plaintiff or the deliberate indifference standard.

*Washington v. Pierce*, 2005 VT 125, ¶¶ 35; 37, 179 Vt. 318, 895 A.2d 173. *See also* 16 V.S.A. § 570f(c) (using an objective standard to review whether school harassment is severe or pervasive).

Far from being standardless, the objective prong necessary to establish harassment under the Vermont HHB Policy is consistent with the reasonable standard concerning school speech articulated in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514, 89 S. Ct. 733, 740, (1969) (requiring "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference" before restricting speech). Both *Tinker* and the Vermont HHB Policy utilize an objective standard to balance access to education and expression.

The Vermont HHB policy is further consistent with *Tinker*'s limitation on First Amendment rights in schools relative to the "invasion of the rights of others." *Id*. at 513, 89 S. Ct. at 740. This limitation has been applied to restrictions on sexual harassment and racial comments

4

in schools on the basis that "students have the right to be free of [comments] that denigrate their race, ethnicity or physical appearance . . . [and] have an equivalent right to enjoy an education in a civil, secure, and safe school environment." *Castro v. Clovis Unified Sch. Dist.*, 604 F. Supp. 3d 944, 950–51 (E.D. Cal. 2022) (citing *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565 (4th Cir. 2011); *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1148 (9th Cir. 2016); *Shen v. Albany Unified Sch. Dist.*, No. 3:17-cv-02478-JD, 2017 WL 5890089, at *4 (N.D. Cal. Nov. 29, 2017)). *See also Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 505 (1st Cir. 2021) ("*Tinker* holds that schools have a special interest in regulating speech that involves the 'invasion of the rights of others.'") (affirming violation of bullying policy).

Contrary to Plaintiff's claim, the Vermont HHB Policy requires more than "teasing" – it requires conduct or comments that objectively interfere with access to education or create an objectively offensive or hostile environment. "Teasing" as described by Plaintiff does not "create[e] an objectively intimidating, hostile, or offensive environment." This objective standard provides clear and meaningful guidelines. The Policy is not overbroad. Consistent with *Tinker*, it applies in school scenarios involving the "invasion of the rights of others."

Plaintiff again confuses his as applied and facial challenges when he asserts that if the Supervisory Union Defendants fired him citing the HHB Policy, then the HHB Policy must be unconstitutional. However, the facial challenge solely looks at the language of the Policy, not its application. Whether or not it was correctly applied in this instance is irrelevant to whether the Vermont HHB Policy is overbroad on its face.[3]

---

[3] In fact, as the evidence and testimony at the September 25, 2023 Preliminary Injunction Hearing established, Plaintiff's entire as-applied narrative is false. He was not terminated for discussing bones, DNA, or masculine women and feminine men; he was terminated because he made disparaging comments about a player on the opposing team while acting as the coach during a snowboarding meet. The termination was not dependent on the Vermont HHB Policy.

A significant aspect of Plaintiff's argument is a criticism that the Vermont HHB Policy is not Title IX, as articulated in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661 (1999). Indeed, as the Vermont Supreme Court explained, Title IX and the Vermont Public Accommodations Act are different types of legislation, with different purposes, requiring different standards. *Washington*, 2005 VT 125, ¶¶ 28-29 (explaining that the VPAA is remedial legislation). Nonetheless, the Vermont Supreme Court imported the objective standard so as to narrowly tailor the law. *See id.* at ¶ 18 (citing *Tinker*).

The plain language of the Vermont HHB Policy is not a prior restraint on speech because it is expressly tied to the objective impact on educational access. The fact that someone may refrain from violating the Policy does not amount to a prior restraint. Contrary to Plaintiff's assertions, nothing in the Vermont HHB Policy prohibits broad discussions on topics such as gender identity, and in fact, Plaintiff did not feel constrained from discussing this topic with the student athletes on his team.[4] Moreover, regardless of the Vermont HHB Policy, Plaintiff was speaking as a public employee and coach and his speech was subject to different considerations than that of a fellow student, as set forth in the Supervisory Union Defendants' *Opposition to Motion for Preliminary Injunction*. (Doc. 35, 3-11).

Because the Vermont HHB Policy is narrowly tailored to further the compelling interest in securing access to education for all students, the Court should grant the motion to dismiss the facial challenge to the Policy.

## II. The Vermont HHB Policy targets the effects of harassment, not the viewpoint or content of speech.

---

[4] Nor was he actually fired for having such discussions, as established at the September 25, 2023 Preliminary Injunction Hearing.

Plaintiff's assertion that Defendants have not established a sufficient basis to adopt a HHB Policy ignores that it is a legislative enactment, not a local policy.  Indeed, when first enacted in 1993, the Vermont Legislature made an express finding about the need:

> This act is intended to implement the provisions of 9 V.S.A. chapter 139 [Vermont's Public Accommodations Act] as they affect schools as places of public accommodation and is not intended to impose additional or higher standards than those expressed in such legislation. The legislature finds that unlawful harassment against students can be a severe problem that inflicts harm on its victims and the entire educational community. Therefore, it is the purpose of this act to protect students by defining unlawful harassment as a form of discrimination which withholds from or denies to a student the accommodations, advantages, facilities, and privileges of the school, and is therefore prohibited by law, in order to facilitate prevention and action regarding complaints of unlawful harassment.

1993, No. 162 (Adj. Sess.).  In 2007, the Legislature amended the VPAA and related laws to prohibit discrimination based on gender identity in Vermont.  2007 Vermont Laws No. 41 (S. 51) ("An Act Relating to Prohibiting Discrimination on the Basis of Gender Identity").  Again, with regard to schools, the legislative purpose is consistent with *Tinker's* reasonable forecast of substantial disruption or material interference or invasion of rights of others and imports an objective standard.

As stated in the Supervisory Union Defendants' *Motion*, *Tinker* recognizes that some regulation of speech in school is inevitable as a result of the need to address its effects on the learning environment.  The Vermont HHB Policy is squarely directed to the impact on the harassed student's ability to access education resulting from the harassment.  It does not prohibit a particular viewpoint on a topic such as gender identity; it addresses behavior that affects a student's access to education.

The Vermont HHB Policy is content-neutral because it is "justified without reference to the content of the regulated speech" in support of the substantial government interest in access to education.  *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S. Ct. 925, 929

7

(1986). As in *Renton,* the Vermont Legislature was entitled to make the determination of the substantial need for such a Policy in light of the "admittedly serious problems" resulting from harassment in schools. *Id.* at 54, 106 S. Ct. at 932.

Additionally, it is a significant distinction that Plaintiff was a public employee acting as the coach at all times relevant to the Verified Complaint. *See Supervisory Union Defendants' Opposition to Motion for Preliminary Injunction*. (Doc. 35, 3-11). The Court does not need to resolve any facts to consider that an employee's expressive rights are not the same as those of a student. *Compare Tinker with Johnson v. Poway Unified Sch. Dist*., 658 F.3d 954, 967–68 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1807 (2012) (teacher did not have First Amendment right to express his religious views through posters in his classroom) (citing *Pickering*). A restriction on Plaintiff's ability to express his views while acting as the coach is not dependent on the Vermont HHB Policy.

In sum, the Vermont HHB Policy targets the effects of harassment, not the views of the speaker. The Vermont Legislature had ample support for enacting the laws underlying the Policy, which does not violate the First Amendment. The Court should grant the motion to dismiss the facial challenge to the Policy.

### Conclusion

For the foregoing reasons, as well as those stated in the Motion, the Supervisory Union Defendants respectfully request Plaintiff's facial content- and viewpoint restriction, prior restraint, and overbreadth challenges be dismissed for failure to state a claim upon which relief may be granted.

Dated at Burlington, Vermont, this 13th day of October, 2023.

WINDSOR CENTRAL SUPERVISORY  
UNION BOARD & SHERRY SOUSA

          By:    */s/ Pietro J. Lynn*
                Pietro J. Lynn, Esq.
                Sean M. Toohey, Esq.
                Lynn, Lynn, Blackman & Manitsky, P.C.
                *Attorneys for Defendants Windsor Central Supervisory Union Board & Sherry Sousa*
                76 St. Paul Street, Suite 400
                Burlington, VT 05401
                (802) 860-1500
                plynn@lynnlawvt.com
                stoohey@lynnlawvt.com